## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
| v. | ) Criminal Action No. 16-55 (RBW) |
|  | ) |
| ROBERT KELSEY, | ) |
|  | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

On August 29, 2016, following a jury trial, the defendant was found guilty of

(1) Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, in violation of

18 U.S.C. § 2423(a) ("Count One"); (2) Aggravated Sexual Abuse of a Child, in violation of

18 U.S.C. § 2241(c) ("Count Two"); and (3) First Degree Child Sexual Abuse (with Aggravating

Circumstances), in violation of 22 D.C. Code §§ 3008, 3020(a)(1) ("Count Three").  <u>See</u> Minute

("Min.") Entry (Aug. 29, 2016); Judgment in a Criminal Case ("Judgment") at 1–2, ECF No. 52.

On December 19, 2016, the Court sentenced the defendant to a six hundred (600) month prison

sentence on Count One with credit for time served; a thirty (30) year prison sentence on Count

Two with credit for time served; and a two hundred and sixty (260) month prison sentence on

Count Three with credit for time served, with all sentences to be served concurrently.  <u>See</u> Min.

Entry (Dec. 19, 2016); Judgment at 3.  The defendant was also sentenced to a supervised release

term of life on each of Counts One and Two and a supervised release term of five years on Count

Three, all to be served concurrently.  <u>See</u> Min. Entry (Dec. 19, 2016); Judgment at 4.  The Court

also imposed a $300 special assessment.  <u>See</u> Min. Entry (Dec. 19, 2016); Judgment at 7.

Currently pending before the Court are: (1) the defendant's Motion to Extend [D]eadline to [F]ile

for Habeas Corpus Relief ("Def.'s Mot. for Extension"), ECF No. 94; and (2) the defendant's

Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Def.'s § 2255 Mot."), ECF No. 106.  Upon careful consideration of the parties' submissions,[1] and the oral arguments heard by the Court at the motion hearing held on September 15, 2023, see Min. Entry (Sept. 15, 2023), the Court concludes for the following reasons that it must deny the defendant's motions.

## I.  BACKGROUND

On December 19, 2016, the defendant appealed his sentence to the District of Columbia Circuit.  See Notice of Appeal at 1, ECF No. 49.  The Circuit affirmed the judgment of conviction on March 8, 2019, see Mandate, Exhibit ("Ex.") A (Judgment) at 1, ECF No. 74-1, and issued its Mandate on May 23, 2019, see Mandate at 1, ECF No. 74.  Subsequently, on July 12, 2020, the defendant, proceeding pro se, submitted his motion to extend the deadline to file an application for a writ of habeas corpus, which was docketed on August 25, 2020.  See Def.'s Mot. for Extension at 1.  As grounds for the requested extension, the defendant argued that (1) "[he] was never informed nor made aware of [the] deadline to file for relief by []either former counsel Mr. Christopher Davis (trial counsel) []or Mrs. Mary Davis (appellate counsel)[,]" id.; (2) "[i]t took [him] over two years . . . to receive [his] case file in order to prepare to file for habeas corpus relief[,]" id.; and (3) "because of the Coronavirus [p]andemic . . . , the institution where [he] is currently being housed has been on a modified operation schedule since [March 31, 2020,]" and "[he] is[ not] allowed access to the law library[,]" id. at 2.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Government's Response to the Court's Order ("Gov't's Resp."), ECF No. 102; (2) the Defendant's Reply to the Government[']s Response to the Court's Order ("Def.'s Resp."), ECF No. 103; (3) the Defendant's Response to Government[']s Response to the Court's Order ("Def.'s 2d Resp."), ECF No. 104; (4) the United States' Opposition to Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence ("Gov't's Opp'n"), ECF No. 121; and (5) the Defendant's Response to Government's Opposition to Defendant['s] Motion Under 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Sentence ("Def.'s Reply"), ECF No. 124.

On February 11, 2021, the Court ordered the government to respond to the defendant's motion, addressing, inter alia, "whether equitable tolling of the statute of limitations under 28 U.S.C. § 2255(f) [wa]s warranted[.]"  Order at 1 (Feb. 11, 2021), ECF No. 95.  On September 24, 2021, the government filed its response to the Court's Order, arguing that "the defendant ha[d] not presented facts sufficient to establish that the doctrine of equitable tolling applies to excuse the late-filing of his § 2255 motion."  Gov't Resp. at 1.  On November 2, 2021, the defendant filed a reply in support of his motion for an extension of time.  See Def.'s Resp. at 1.[2]

On February 22, 2022, the Court issued an Order stating that, "[i]n order to fully assess the timeliness of any § 2255 motion filed by the defendant, the Court must review the grounds on which the defendant seeks relief."  Order at 2 (Feb. 22, 2022), ECF No. 105.  The Court therefore directed the defendant to "file a copy of his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2255" on or before April 25, 2022, and stated that it would "reserve its ruling on the timeliness of the defendant's [then-]forthcoming motion."  Id.  On April 18, 2022, the defendant submitted his pro se § 2255 motion, which was docketed on April 29, 2022.  See Def.'s § 2255 Mot. at 1.  The government filed its opposition on January 3, 2023, see Gov't's Opp'n at 1, and the defendant filed his reply in support of his § 2255 motion on March 24, 2023, see Def.'s Reply at 1.  Finally, on September 15, 2023, the Court held a hearing on the defendant's pending motions.  See Min. Entry (Sept. 15, 2023).

---

[2] The defendant filed a second reply on February 7, 2022, see Def.'s 2d Resp. at 1, which appears to be substantively identical to his first reply, compare generally Def.'s Resp., with Def.'s 2d Resp.  However, the defendant's second reply is handwritten instead of typed.

## II.     STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255, permits a person in custody under sentence by federal court to "move the court which imposed the sentence to vacate, set aside[,] or correct the sentence" on grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, . . . that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  If the reviewing court finds that any of these grounds exist, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  Id. § 2255(b).  "The person seeking to vacate his sentence shoulders the burden of sustaining his contentions by a preponderance of the evidence."  United States v. Booker, 564 F. Supp. 2d 7, 11 (D.D.C. 2008) (citing United States v. Simpson, 475 F.2d 934, 935 (D.C. Cir. 1973)).

While a district court must construe pro se filings "liberally[,]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), the court "need not conduct an evidentiary hearing before denying a § 2255 motion when 'the motion and the files and records of the case conclusively show the prisoner is entitled to no relief[,]'" United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting 28 U.S.C. § 2255(b)).  Moreover, the District of Columbia Circuit "ha[s] stressed that a district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion when the judge denying the § 2255 motion also presided over the trial in which the petitioner claims to have been prejudiced."  Id.

### III.   ANALYSIS

In his § 2255 motion, the defendant challenges his conviction on grounds of ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution. See Def.'s § 2255 Mot. at 13–21.  As a threshold matter, the Court will first evaluate whether the defendant's § 2255 motion is timely and, if not, whether the motion is subject to equitable tolling.  The Court will then analyze the merits of the defendant's ineffective assistance of counsel claims.[3]

### A.   Whether the Submission of the Defendant's § 2255 Motion was Timely

The government argues that the "defendant's [§ 2255] motion is untimely[] and [that] equitable tolling of the [one-year] statute of limitations under 28 U.S.C. § 2255(f) is not warranted."  Gov't Opp'n at 1.  By contrast, the defendant argues that the one-year statute of limitations does not bar his motion because (1) "[he] was[ not] informed by either [his trial or appellate] attorney [ ] when [his] [one-]year statut[ory period of limitation] ends[;]" (2) "[t]he Covid pandemic caused the institution [in which] [he is] confined to go on lockdown with no access to [the] law library[;]" and (3) "[he] did[ not] receive [his] case file from [his] attorney until Dec[ember] 2019[.]"  Def.'s § 2255 Mot. at 10.  The Court will first address whether the

---

[3] The government claims that the "[d]efendant's allegations of trial counsel's ineffectiveness are procedurally defaulted because he failed to raise them on direct appeal even though he did or should have known about them at that time[,]" Gov't Opp'n at 14–15, and he cannot "demonstrate both cause and prejudice sufficient to overcome the default of his claims[,]" id. at 15.  Although the general rule is that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice[,]" the Supreme Court has held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."  Massaro v. United States, 538 U.S. 500, 504 (2003); see also Hinton v. United States, Nos. 99-cr-211, 01-cv-1508 (RMU), 2003 WL 21854935, at *2 (D.D.C. Aug. 5, 2003) ("The procedural default rule does not apply to claims of ineffective assistance of counsel." (citing Massaro, 538 U.S. at 503–04)).  Thus, the defendant's claims alleging ineffective assistance of his trial counsel are not procedurally barred.  See United States v. Palmer, 902 F. Supp. 2d 1, 17 (D.D.C. 2012) ("Ineffective assistance of trial counsel claims are not subject to th[e] cause and prejudice requirement under § 2255 and may be advanced 'whether or not the petitioner could have raised the claim on direct appeal.'" (quoting Massaro, 538 U.S. at 504)).

submission of the defendant's § 2255 motion was timely before proceeding to an analysis of whether the motion is subject to equitable tolling.

### 1.  Timeliness

The Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2255, provides a "[one]-year period of limitation[.]"  28 U.S.C. § 2255(f).  The limitation period shall run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.  "Finality [under 28 U.S.C. § 2255(f)(1)] attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."  Clay v. United States, 537 U.S. 522, 527 (2003). Under the Rules of the Supreme Court, "a petition for a writ of certiorari to review a judgment . . . , entered by . . . a United States court of appeals . . . is timely when it is filed with the Clerk of th[e Supreme] Court within [ninety] days after entry of the judgment."  Sup. Ct. R. 13.1.  "[I]f a petition for rehearing is timely filed in the lower court[,] . . . the time to file the petition for a writ of certiorari . . . runs from the date of the denial of rehearing[.]"  Sup. Ct. R. 13.3.

Here, the defendant's § 2255 motion does not reference a government-created impediment in violation of the Constitution or laws of the United States, see 28 U.S.C. § 2255(f)(2), a "newly recognized [right] [ ] the Supreme Court [ ] made retroactively applicable

to cases on collateral review[,]" id. § 2255(f)(3), or a "date on which the facts supporting the

claim or claims presented could have been discovered through the exercise of due diligence[,]"

id. § 2255(f)(4).  See generally Def.'s § 2255 Mot.  Thus, the one-year statute of limitations

period in this case runs from "the date on which the judgment of conviction bec[a]me[] final[,]"

28 U.S.C. § 2255(f)(1).  See Dodd v. United States, 545 U.S. 353, 357 (2005) (stating that "[i]n

most cases, the operative date from which the limitation period is measured will be . . . the date

on which the judgment of conviction becomes final" (internal quotation marks omitted)).

      After the District of Columbia Circuit affirmed the Court's judgment, see United States v.

Kelsey, 917 F.3d 740, 751 (D.C. Cir. 2019), the defendant filed a petition for rehearing and a

petition for rehearing en banc, see Petition for Rehearing and Rehearing En Banc (Apr. 8, 2019),

United States v. Kelsey, No. 16-312.  On May 14, 2019, the Circuit denied both petitions.  See

Order at 1 (May 14, 2019), United States v. Kelsey, No. 16-312, Document No. 1787788; Order

at 1 (May 14, 2019), United States v. Kelsey, No. 16-312, Document No. 1787789.  The

defendant had ninety days from that date, i.e., until August 12, 2019, to file a petition for writ of

certiorari in the United States Supreme Court.  See Sup. Ct. R. 13.3.  Because the defendant did

not file a petition for writ of certiorari, his conviction became final on August 12, 2019, "when

the time for filing a certiorari petition expire[d]."  Clay, 537 U.S. at 527.  Therefore, the

defendant should have filed his § 2255 motion on or before August 12, 2020, to comply with

§ 2255(f)'s one-year statute of limitations.  See 28 U.S.C. § 2255(f)(1).  Instead, the defendant

filed his motion for an extension of the deadline to file an application for a writ of habeas corpus

on July 12, 2020,[4] see Def.'s Mot. for Extension at 1, and did not file his § 2255 motion until

---

[4] The defendant's motion for an extension of time to file his § 2255 motion remains pending, see Def.'s Mot. for Extension at 1, and is resolved by the Court in this Memorandum Opinion, see infra Section III.A.2.  However, as a majority of circuit courts that have considered the issue—including the District of Columbia Circuit—have held, the

(continued . . .)

April 18, 2022,[5] see Def.'s § 2255 Mot. at 1.  Thus, the Court concludes that the defendant's § 2255 motion is untimely because it was not filed until April 18, 2022, see Def.'s § 2255 Mot. at 1, approximately one year and eight months after the one-year statute of limitations had expired, see 28 U.S.C. § 2255(f)(1).

### 2.  Equitable Tolling

Section 2255(f)'s one-year statute of limitations can be subject to equitable tolling.  See United States v. Crews, No. 11-cr-372-1 (EGS), 2022 WL 17583797, at *6 (D.D.C. Dec. 12, 2022) ("The doctrine of equitable tolling applies to the filing of § 2255 motions." (citing United

---

(. . . continued)
Court lacked jurisdiction to consider the defendant's request for an extension of time when his motion for such extension was filed on July 12, 2020, because he had not yet filed a § 2255 motion.  See United States v. Glover, No. 05-3110, 2006 WL 3798926, at *1 (D.C. Cir. June 27, 2006) (per curiam) (holding that "the district court correctly concluded[ that the] [defendant's] motion to extend the time for filing a 28 U.S.C. § 2255 application did not present a justiciable case or controversy" (citing United States v. Leon, 203 F.3d 162, 163 (2d Cir. 2000) (per curiam))); Leon, 203 F.3d at 164 (holding that "a federal court lacks jurisdiction to consider the timeliness of a § 2255 petition until a petition is actual filed" because, without the petition, "there is no case or controversy to be heard, and any opinion [the court] were to render on the timeliness issue would be merely advisory"); Green v. United States, 260 F.3d 78, 82–83 (2d Cir. 2001) (holding that "a district court may grant an extension of time to file a motion pursuant to [§] 2255 only if (1) the moving party requests the extension upon or after filing an actual [§] 2255 motion, and (2) rare and exceptional circumstances warrant equitably tolling the limitations period" (internal quotation marks omitted)); United States v. White, 257 F. App'x 608, 609 (4th Cir. 2007) (per curiam) (concluding that "the district court lacked jurisdiction to consider [a] motion [for an extension of time to file a § 2255 motion] . . . because [the defendant] had not filed a § 2255 motion challenging the original judgment of conviction and his motion did not raise any potential grounds for relief"); United States v. McFarland, 125 F. App'x 573, 574 (5th Cir. 2005) (per curiam) (concluding "that a federal court lacks jurisdiction to consider the timeliness of a § 2255 petition until a petition is actually filed" (quoting Leon, 203 F.3d at 164)); United States v. Asakevich, 810 F.3d 418, 419–20 (6th Cir. 2016) (holding that "a federal prisoner [cannot] ask a court to grant him an extension of time to file a . . . § 2255 motion before he has filed the § 2255 motion" because "federal courts have no license to provide [ ] advice" on a request for "an extension for an action not yet in existence and one that may never come into existence"); Swichkow v. United States, 565 F. App'x 840, 844 (11th Cir. 2014) (per curiam) (affirming the denial of a request for an extension of time to file a § 2255 motion because the district court "lacked jurisdiction to consider [the defendant's] requests for an extension of time . . . absent a formal request for habeas relief" as "there was no actual case or controversy to be heard").  But see United States v. Thomas, 713 F.3d 165, 174 (3d Cir. 2013) (holding that, because "a motion for an extension of time to file a § 2255 motion is [ ] a continuance of the underlying criminal case[,] . . . a district court has subject matter jurisdiction to rule on a § 2255 motion for an extension of time before the substantive motion for relief is actually filed").

[5] The defendant's § 2255 motion was docketed on April 29, 2022, but it is dated April 18, 2022.  See Def.'s § 2255 Mot. at 21.  Although the difference in these dates is immaterial because both dates are after the statute of limitations had expired, the Court will refer to the date on the defendant's pleading, i.e., April 18, 2022, as the filing date.  See United States v. Tanguay, No. 08-cr-271 (RCL), 2020 WL 2735589, at *2 (D.D.C. May 26, 2020) ("Motions by pro se prisoners are considered filed when placed in the prison mailing system." (underline added) (citing Blount v. United States, 860 F.3d 732, 741 (D.C. Cir. 2017))).

States v. McDade, 699 F.3d 499, 504 (D.C. Cir. 2012))).  A defendant moving for relief under § 2255 "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation marks omitted).

Equitable tolling "is to be employed only sparingly[.]"  United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000) (internal quotation marks omitted).  It requires the Court to employ a "case-by-case" approach drawing "upon decisions made in other similar cases for guidance." Holland, 560 U.S. at 650.  "The threshold showing 'necessary to trigger equitable tolling is very high,'" United States v. Martin, No. 98-cr-329 (RCL), 2022 WL 1618869, at *9 (D.D.C. May 23, 2022) (quoting Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)), because "courts should not 'create a loophole . . . contrary to the legislative intent [of the AEDPA] of insuring a greater degree of finality,'" id. (quoting Jones v. United States, 304 F.3d 1035, 1039 (11th Cir. 2002)). "In light of these principles, courts in th[e District of Columbia] Circuit rarely permit equitable tolling for § 2255 motions."  Id.; see also United States v. King, No. 18-cr-318 (JDB), 2022 WL 579483, at *9 (D.D.C. Feb. 25, 2022) (listing the three cases "[i]n the last ten years" in which "courts in th[e District of Columbia] Circuit have granted equitable tolling of § 2255(f)'s limitations period").

The Court will first evaluate whether "some extraordinary circumstance stood in [the defendant's] way and prevented timely filing."  Holland, 560 U.S. at 649 (internal quotation marks omitted).  Because the Court ultimately concludes that the defendant has not demonstrated extraordinary circumstances, the Court need not address whether the defendant "has been pursuing his rights diligently[.]"  Id. (internal quotation marks omitted).  See id. (requiring that the defendant show both "that he has been pursuing his rights diligently[] and [ ] that some

extraordinary circumstance stood in his way and prevented timely filing" (emphasis added) (internal quotation marks omitted)).

### a.      Whether Extraordinary Circumstances Prevented Timely Filing

The defendant alleges that three extraordinary circumstances "stood in his way to prevent timely filing."  Def.'s Resp. at 4.  First, the defendant argues that he "was never informed nor made aware of [the] deadline to file for relief by []either [of his] former counsel[.]"  Def.'s Mot. for Extension at 1.  Second, the defendant asserts that "the Covid-19 pandemic . . . forced the institution [where he is detained] to go on complete lockdown for approximately six [ ] months" and prevented him from "access[ing] the prison[']s law library to complete his § 2255 motion in a timely manner."  Def.'s Resp. at 4.  Third, the defendant argues that "[i]t took [him] over two years and lengthy legal filings to receive [his] case file in order to prepare to file for habeas corpus relief[,]" Def.'s Mot. for Extension at 1, and "suggest[s] that if former counsel would have delivered [the] case file in [a] routine manner, instead of [the] defendant having to file lengthy motions, [he] would have had enough time to properly file [his §] 2255 motion in [a] timely manner[,]" Def.'s Reply at 4.

In opposition, the government argues that (1) "neither Christopher Davis nor Mary Davis were appointed by the Court to represent the defendant in filing a § 2255 motion[,]" Gov't's Resp. at 8, and that "[n]either [the defendant's] own ignorance of the filing deadline [n]or his lack of representation is grounds for tolling[,]" id.; (2) "the defendant has not proffered any facts or details that explain how and when he did learn of the one-year period for filing a § 2255 motion[,]" id.; (3) "while the defendant proffers that he asked 'former counsel' on 'numerous occasions' about the filing deadline, he has not provided any documentation to substantiate that claim," id. at 9; and (4) "former counsel provided [the] defendant and his father with [the]

defendant's trial file in November 2019[,]" id., and that "[d]espite the passage of almost two

years, [the] defendant ha[d] [not] yet [ ] file[d] his § 2255 motion[,]" id.

 "To count as sufficiently 'extraordinary[]' [to support equitable tolling] . . . 'the

circumstances that caused a litigant's delay must have been beyond [his] control'; in other

words, the delay 'cannot be a product of that litigant's own misunderstanding of the law or

tactical mistakes in litigation.'" Head v. Wilson, 792 F.3d 102, 107 (D.C. Cir. 2015) (third

alteration in original) (quoting Menominee Indian Tribe of Wis. v. United States, 764 F.3d 51, 58

(D.C. Cir. 2014)). "The test requires not merely that an extraordinary circumstance existed[,]"

Martin, 2022 WL 1618869, at *8, but "[r]ather[ that] the extraordinary circumstances . . .

'[made] it impossible to file a petition on time[,]'" id. (third alteration in original) (quoting

United States v. Pollard, 416 F.3d 48, 56 (D.C. Cir. 2005)).

  **i. Lack of Knowledge of the Deadline to File for Relief under § 2255**

 The defendant first claims that the fact that he "was never informed nor made aware of

[the] deadline to file for relief by []either [of his] former counsel[,]" Def.'s Mot. for Extension

at 1, qualifies as an extraordinary circumstance warranting equitable tolling. However, the

District of Columbia Circuit has held that a "prisoner's ignorance of the law or unfamiliarity

with the legal process will not excuse his untimely filing, nor will a lack of representation during

the applicable filing period." Cicero, 214 F.3d at 203; see also United States v. Lawson, 608 F.

Supp. 2d 58, 62 (D.D.C. 2009) ("[A] failure to meet the statutory deadline due to pro se

representation is not a circumstance in which it is appropriate to toll the statute of limitations.").

Therefore, the Court concludes that the defendant's alleged lack of knowledge of the deadline to

file for relief under § 2255 does not qualify as an extraordinary circumstance justifying equitable

tolling. See Mathison v. United States, 648 F. Supp. 2d 106, 112 (D.D.C. 2009) ("A defendant

who is without legal representation, or sits on his rights, or is ignorant of the law, does not

present extraordinary circumstances.").

###### ii.     The COVID-19 Pandemic

The defendant also asserts that the COVID-19 pandemic qualifies as an extraordinary

circumstance.  See Def.'s Resp. at 4.  The defendant states that "the institution where [he] is

housed was on complete lockdown beginning on April 1, 2020[,] until staff modified the

lockdown on or about the end of August 2020[,]" and that "[t]he law library, at the time of the

filing of his motion for extension [of time on July 12, 2020], and until recently, [i.e., sometime

shortly before the defendant's response on October 20, 2021,] was only available on one [ ] of

the six [ ] computers." Id. at 3.  As another member of this Court has explained, "[t]he

COVID-19 pandemic was and is an extraordinary circumstance by any definition, creating

logistical hurdles (to say the least) in almost every aspect of life, legal practice included[,] [b]ut

the pandemic 'does not automatically warrant equitable tolling[;] . . . the [defendant] must

establish that . . . the COVID-19 pandemic specifically prevented him from' meeting the

deadline." King, 2022 WL 579483, at *8 (fourth alteration in original) (quoting Shepherd v.

Asuncion, No. 21-cv-4147 (JWH(E)), 2021 WL 6496744, at *8 (C.D. Cal. Nov. 3, 2021)).

Furthermore, generally a "[defendant's] lack of access to a law library . . . is [not] considered to

be an extraordinary circumstance."  Blount v. United States, 69 F. Supp. 3d 242, 248 (D.D.C.

2014).

Here, the defendant's conviction became final on August 12, 2019, see supra

Section III.A.1, which is approximately seven months before the pandemic began in March

2020.  Even assuming the defendant was unable to present his claims before receiving his case

file "on or about November 18, 2019[,]" Def.'s Reply at 4, he does not explain why he was

unable to do so in the approximately four months after he received his case file and before the detention facility went "on complete lockdown [ ] on April 1, 2020[,]" Def.'s Resp. at 3.  See generally Def.'s Mot. for Extension; Def.'s Resp.; Def.'s § 2255 Motion; Def.'s Reply. Additionally, although the defendant's access to the law library may have been limited for a period of time, the government represents that it "obtained [sixty-four] pages of records from USP Tucson that show that the defendant had access to a prison computer, despite the COVID-19 pandemic[,]" and that the defendant "logged into the [l]aw [l]ibrary" on March 5, 2020, March 6, 2020, March 16, 2020, March 28, 2020, March 29, 2020, September 20, 2020, and January 31, 2021.  Gov't's Resp. at 3 n.3.  In any event, "lack of access to a law library . . . is [not] considered to be an extraordinary circumstance."  Blount, 69 F. Supp. 3d at 248. Moreover, the defendant was able to file a motion for an extension of time on July 12, 2020, during the pandemic.  See Def.'s Mot. for Extension at 1.  Although not dispositive, the filing of such motion further undermines the defendant's argument that the pandemic precluded him from filing a § 2255 motion before the deadline, see Def.'s Resp. at 4.  Cf. King, 2022 WL 579483, at *8 (concluding that the pandemic was not the cause of a filing's untimeliness where "[the defendant] was able to file two motions for compassionate release—and his successive attorneys were able to brief those motions—during the pandemic").

Thus, the Court concludes that "even accepting that COVID-19 constitutes an extraordinary circumstance for purposes of equitable tolling, . . . the pandemic was [not] the cause of the [motion's] untimeliness."  King, 2022 WL 579483, at *8.  Although the defendant's ability to work on his § 2255 motion may have been interrupted for some period of time during the pandemic, the COVID-19 related restrictions were not in effect until April 1, 2020, and the defendant could have filed his § 2255 motion long before that.  See Martin, 2022 WL 1618869,

at *8 ("The test requires not merely that an extraordinary circumstance existed[,]" but "[r]ather[ that] the extraordinary circumstances . . . '[made] it impossible to file a petition on time.'" (fourth alteration in original) (quoting <u>Pollard</u>, 416 F.3d at 56)).

###   iii.   The Delay in Receiving the Defendant's Case File

Finally, the defendant alleges that the failure of his former counsel to "deliver[] [his] case file in [a] routine manner[,]" Def.'s Reply at 4, is an extraordinary circumstance justifying equitable tolling.  The record reflects that the defendant received his case file in November 2019, <u>see</u> Counsel's Response to Defendant's Request for Documents ¶ 2, ECF No. 88 ("Counsel verified that the defendant received the materials on or about November 8, 2019.  The materials not allowed by BOP were mailed to the defendant's father who verified receipt."); Def.'s Reply at 4 ("[The d]efendant received his case file on or about November 18, 2019."), which was approximately three months after his conviction became final on August 12, 2019, and the one-year statute of limitations began to run, <u>see</u> <u>supra</u> Section III.A.1.  Similar to the defendant's argument regarding the COVID-19 pandemic, the defendant offers no explanation for why he was unable to present his claims in the approximately four months after he received his case file in November 2019, and before the detention facility went "on complete lockdown [ ] on April 1, 2020[,]" Def.'s Resp. at 3.  <u>See generally</u> Def.'s Mot. for Extension; Def.'s Resp.; Def.'s § 2255 Mot.; Def.'s Reply.  Therefore, the Court concludes that the delay in the defendant receiving his case file does not qualify as an extraordinary circumstance warranting equitable tolling.  <u>See</u> <u>Martin</u>, 2022 WL 1618869, at *8 (stating that the extraordinary circumstances must have "[made] it impossible to file a petition on time" (alteration in original) (quoting <u>Pollard</u>, 416 F.3d at 56)).

In sum, because the defendant has not demonstrated extraordinary circumstances, he is not entitled to equitable tolling of the statute of limitations for the filing of a § 2255 motion and, thus, the Court must deny his motion to extend the deadline to file for habeas corpus relief.  See Holland, 560 U.S. at 652 (stating that a defendant moving for relief under § 2255 "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" (internal quotation marks omitted)).  Accordingly, because equitable tolling is not warranted, the Court must deny the defendant's § 2255 motion as untimely.

**B.      The Merits of the Defendant's Ineffective Assistance of Counsel Claims**

Even if the defendant's § 2255 motion were timely, the motion would fail on the merits.  The Sixth Amendment to the United States Constitution recognizes "the right to the effective assistance of counsel."  Strickland v. Washington, 466 U.S. 668, 686 (1984) (internal quotation marks omitted).  The Supreme Court has established a two-prong test (the "Strickland test") for determining whether a defendant's Sixth Amendment right was violated.  See id. at 687–88.  A defendant claiming ineffective assistance of counsel must show both: (1) that his counsel's performance was deficient such that it "fell below an objective standard of reasonableness . . . under prevailing professional norms[,]" id. at 688; and (2) "that the deficient performance prejudiced the defense[,]" id. at 687.

In order to demonstrate that counsel's performance was deficient under the first prong of the Strickland test, "a defendant must show that the [counsel's] decision []or inaction[] . . . was 'unreasonable' and not merely a strategic choice."  United States v. Johnson, No. 18-cr-388-3 (RDM), 2023 WL 4350783, at *2 (D.D.C. July 5, 2023) (quoting Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)).  In evaluating reasonableness, a court must apply "a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal quotation marks omitted). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quoting Strickland, 466 U.S. at 690). In assessing prejudice under the second prong of the Strickland test, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding[,]" id. at 693, but rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable[,]" id. at 687. A court deciding an ineffective assistance claim is not required "to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

Here, the defendant challenges his conviction on four main grounds. See Def.'s § 2255 Mot. at 13–21. First, the defendant asserts a claim of ineffective assistance of counsel based on his trial attorney's failure to bring numerous alleged witness inconsistencies to the attention of this Court and the jurors. See id. at 13–17. Second, the defendant challenges the DNA chain of custody, see id. at 18, and alleges that "[his] attorney fail[ed] to fully investigate and question [the] chain of custody of DNA evidence[,]" id. at 21. Third, the defendant alleges that the

testimony of a trial witness was biased, see id. at 20, and argues that "his [attorney] fail[ed] to strike [this] testimony as bias[ed] testimony[,]" id. at 21. Finally, the defendant challenges the waiver of his constitutional right to a Speedy Trial, see id. at 19, and faults his attorney for "hav[ing] [him] waive [his] constitutional right to a speedy trial so that [his attorney] could have adequate time to prepare [a] defense for trial [and] then tell[ing] [the defendant] a week before trial there [wa]s no rational defense[,]" id. at 21.

The Court will address each of the defendant's ineffective assistance of counsel claims in turn. Because the Court ultimately concludes that the defendant has failed to demonstrate at least one of the requirements under Strickland for each of his claims, the Court need not address both the deficient performance and prejudice prongs as to each claim. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

### 1. Trial Counsel's Failure to Highlight Alleged Witness Testimony Inconsistencies

The defendant first asserts that his trial "attorney[,] Christopher Davis[,]" was ineffective because he "failed to bring to the attention of this Court and [the] jurors" "an alarming amount of inconsistencies in regards to the government[']s case including key witnesses[.]" Def.'s § 2255 Mot. at 13. Specifically, the defendant raises eighty-three alleged inconsistencies in the evidence. See id. at 13–17. In opposition, the government argues that the defendant has "cherry-pick[ed] from the record and cit[ed] trial testimony out of context." Gov't Opp'n at 16. The government states that, "[i]n essence, [the] defendant argues that if trial counsel had elicited these inconsistencies through cross-examination, the government's theory of the case in specific areas would have been undermined[.]" Id. However, the government asserts that "[t]he trial record does not support [the] defendant's purported inconsistencies" and that the "defendant can

neither show that his counsel's performance was deficient nor that he was prejudiced by trial counsel's method of cross-examination."  Id.

As to this claim, the defendant has not satisfied the prejudice prong of the Strickland test for ineffective assistance of counsel.  See Strickland, 466 U.S. at 687.  As the District of Columbia Circuit observed, there was "overwhelming evidence identifying [the defendant] as the perpetrator" in this case.  Kelsey, 917 F.3d at 751.  For example, several witnesses including the victim and two officers from the Prince George's County Police Department testified regarding the victim's identification of the defendant as her assailant from a "double blind photo array[.]"  Transcript of Jury Trial – Day 2 at 379:22 (Aug. 23, 2016) ("Trial Tr. Day 2"), ECF No. 60; see id. at 379:19–381:7 (testimony of Sergeant Nicholas Collins describing the photo array he prepared and from which the victim identified the defendant); Transcript of Jury Trial – Day 3 at 592:5–602:9 (Aug. 24, 2016) ("Trial Tr. Day 3"), ECF No. 61 (testimony of detective Joshua Kingston describing the photo array he conducted with the victim); id. at 526:14–527:23 (testimony of the victim indicating that she identified the defendant from pictures shown to her at the police station).  The victim also definitively identified the defendant as her assailant during the trial.  See Trial Tr. Day 3 at 505:20–506:19 (testimony of the victim describing the appearance of the perpetrator and making an in-court identification of the defendant); id. at 551:22–552:1 (testimony of the victim indicating that she was "100 percent" certain that the person she had sex with was the defendant in the courtroom).

The victim further testified at trial that she communicated with the defendant over various social media applications, see id. at 439:21–452:5; id. at 453:20–457:4, and that she communicated with him on her cell phone on the day of the assault, see id. at 464:3–465:14.  She also testified that the defendant picked her up from her summer camp in Maryland, see id.

at 458:4–5; id. at 467:8–468:23, drove her to his father's house in Washington, D.C., see id. at 474:23–475:19, and sexually assaulted her there, see id. at 493:19–501:15.  Additionally, telephone records were introduced demonstrating that the defendant and the victim communicated via their cell phones on the day of the offense, see id. at 604:13–605:10, and that the defendant's telephone records listed his address as 512 21st Street, Northeast, Washington, D.C., where the assault occurred, see Trial Tr. Day 2 at 330:17–331:5.  The victim also identified a photograph of the defendant's house as the location where the assault occurred.  See Trial Tr. Day 3 at 510:15–512:3.

Moreover, the defendant made false exculpatory statements to the police, see Trial Tr. Day 2 at 370:6–375:12 (testimony of Sergeant Collins indicating that the defendant told him that he had picked up a girl from Maryland for his cousin Kevin and had driven her to an area in D.C. near the location where the assault occurred), and to a government witness, Ms. Brendell Smith, see Trial Tr. Day 3 at 584:18–586:22 (testimony of Ms. Smith describing the narrative the defendant provided to her regarding a girl he picked up from a camp for his friend Kevin), which further support the defendant's guilt.  Finally, "[t]he DNA evidence . . . strongly supported the conclusion that [the defendant] was the perpetrator."  Kelsey, 917 F.3d at 751; see, e.g., Trial Tr. Day 2 at 300–08 (expert testimony of Hope Parker, a forensic scientist with the D.C. Department of Forensic Sciences, describing how the DNA from the victim's vaginal cervical swabs matched the DNA of the defendant); Transcript of Jury Trial – Day 5 at 639–45 (Aug. 26, 2016) ("Trial Tr. Day 5"), ECF No. 63 (fact witness testimony of Shana Leona Irene Mills, a forensic scientist for the D.C. Department of Forensic Sciences, regarding the testing of the victim's sexual assault examination kit swabs).

In light of the overwhelming evidence of the defendant's guilt presented during the trial, there is no reasonable probability that a jury would have acquitted the defendant even if counsel had raised the alleged inconsistencies identified by the defendant through cross-examination of the government's witnesses. See Strickland, 466 U.S. at 695 (stating that, in assessing prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt"); id. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). The Court therefore concludes that the defendant has failed to demonstrate that his Sixth Amendment right to the effective assistance of counsel was violated due to trial counsel's alleged failure to elicit alleged witness inconsistencies. See id. at 687 (explaining that a defendant claiming ineffective assistance of counsel must show that "the deficient performance prejudiced the defense").

## 2. Trial Counsel's Alleged Failure to Question the Chain of Custody for DNA Evidence

Next, the defendant challenges the DNA chain of custody, arguing that "[his] attorney fail[ed] to fully investigate and question [the] chain of custody of DNA evidence[.]" Def.'s § 2255 Mot. at 21. The defendant asserts that "[n]othing shows who sent material to [the] private lab" and that the "[g]overnment introduced [a] DNA [P]ower[P]oint at trial which indicates 'the laboratory failed to confirm three of its matches within the advised [thirty] day period[.]'" Id. at 18. The defendant further argues that the "[r]eport from P[rince] G[eorge's] County Police/DNA laboratory request for exam[,] which includes [the] sexual assault kit" says that "D[.]C[.] Detective Oliver sign[ed] and pick[ed] [it] up on [August 8, 2014,] at 1237 h[ou]rs[,]" but that "[t]here are no reports stating when and where [ ] Detective Oliver took the sexual assault kit." Id.

In opposition, the government argues that "[t]rial counsel reasonably did not object to the admission of the DNA evidence because the prosecution established an adequate chain of

custody." Gov't's Opp'n at 23. The government also argues that "[t]rial counsel pursued the

reasonable strategy of challenging the weight of the evidence based on the chain of custody

through cross-examination and in his summation." Id. Furthermore, the government asserts that

the "[d]efendant [ ] cannot demonstrate Strickland prejudice" because the "defendant's

suggestion that the integrity of the DNA evidence was somehow undermined is refuted by the

record[,]" and "even assuming arguendo that the DNA evidence had been excluded, there was

still substantial evidence implicating the defendant." Id. at 24.

       Here, even assuming that the DNA evidence should have been excluded, which the Court

concludes the defendant has not shown should have occurred,[6] the defendant has failed to

demonstrate Strickland prejudice as to his claim that his trial attorney failed to fully investigate

and question the chain of custody of DNA evidence. See Strickland, 466 U.S. at 687. As

previously detailed, see supra Section III.B.1, there was a considerable amount of non-DNA

evidence implicating the defendant. Thus, even if the DNA evidence had not been admitted at

trial, there is no "reasonable probability that . . . the factfinder would have had a reasonable

doubt respecting [the defendant's] guilt." Strickland, 466 U.S. at 695. Because the defendant

has not shown sufficient prejudice resulting from the use of the DNA evidence at trial, the Court

concludes that the defendant has not demonstrated ineffective assistance of counsel as to this

---

[6] In its opposition to the defendant's § 2255 motion, the government details the chain of custody established at trial for the admissibility of the DNA evidence. See Gov't's Opp'n at 22–23. Even if the defendant's trial counsel had argued that the DNA evidence was inadmissible in light of alleged gaps in the chain of custody, the Court would not have, based on the evidence presented during the trial, excluded the evidence because, even assuming there was a basis for having raised an objection to the admissibility of the DNA evidence, "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1 (2009) (second alteration in original) (internal quotation marks omitted); see also United States v. Garcia, 757 F.3d 315, 319 (D.C. Cir. 2014) ("In order for evidence to be admissible, [ ] a complete chain of custody need not always be proved. . . . The proponent of the evidence must only demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated." (internal citations and internal quotation marks omitted)); id. ("Once the evidence is admitted, gaps in the chain of custody affect only the weight it is given by the trier of fact.").

claim.  See id. at 687 (requiring a defendant to demonstrate that his counsel's "deficient

performance prejudiced the defense").[7]

### 3. Trial Counsel's Failure to Challenge the Allegedly Biased Testimony of Brendell Smith

The defendant also argues that the testimony of one of the government's trial witnesses,

Brendell Smith, "was based on bias that she had towards [the defendant] because of her

daughter['s] meritless claim of [the defendant] having made sexual advances at her and [ ]

because of the fact that the victim happens to be her goddaughter."  Def.'s § 2255 Mot. at 20.

The defendant asserts that his trial counsel was ineffective because he "fail[ed] to strike [this]

testimony as bias[ed] testimony."  Id. at 21.  In opposition, the government argues that, "[t]rial

counsel's decision to not question [Ms.] Smith about her alleged bias, based upon her knowledge

of [the] defendant's other sexual relations with young girls, was eminently reasonable since any

such cross-examination would have opened the door to a wide-ranging inquiry by the parties into

[the] defendant's other bad acts and would have been highly prejudicial to [the] defendant in the

eyes of the jury."  Gov't Opp'n at 20–21.  The government's arguments are absolutely correct.

---

[7] To the extent the defendant challenges the admissibility of the DNA evidence itself, see Def.'s Reply at 8 (stating that the defendant is not claiming that "counsel was ineffective for failing to challenge the test results based on an allegedly deficient chain of custody[,]" but "[i]nstead, [he] is alleging that the DNA evidence was mishandled or contaminated"), 28 U.S.C. § 2255 is not the proper vehicle to raise this claim.  "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."  Massaro, 538 U.S. at 504.  "To establish cause, a defendant must demonstrate 'some objective factor external to the defense [that] impeded counsel's efforts to raise the claim,' such as government interference or that the factual or legal basis for the claim was not reasonably available."  United States v. Martin, No. 98-cr-329 (RCL), 2021 WL 4989983, at *3 (D.D.C. Oct. 27, 2021) (alteration in original) (quoting McCleskey v. Zant, 499 U.S. 467, 493–94 (1991), superseded on other grounds by 28 U.S.C. § 2244(b)).  Moreover, "[p]rejudice requires that the defendant show 'not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Id. (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  Here, the defendant did not challenge the admissibility of the DNA evidence on appeal, see Kelsey, 917 F.3d at 744 (stating the "three grounds" on which the defendant "challenge[d] his conviction"), and he has not alleged any "objective factor external to the defense [that] impeded [his] counsel's efforts to raise the claim, such as government interference or that the factual or legal basis for the claim was not reasonably available" on appeal, Martin, 2021 WL 4989983, at *3 (first alteration in original) (internal quotation marks omitted).  Furthermore, as described above, see supra Section III.B.2, the defendant has not demonstrated prejudice based on the admission of the DNA evidence.

Additionally, the government argues that the defendant was not prejudiced because "the evidence of [the] defendant's guilt was overwhelming, and [the] defendant's proposed cross-examination of [Ms.] Smith would have only harmed his defense." Id. at 21.  This is also correct.

As with the defendant's first two claims of ineffective assistance of counsel, see supra Sections III.B.1, B.2, the defendant has failed to demonstrate prejudice under Strickland as to his third claim.  See Strickland, 466 U.S. at 687.  Again, assuming without deciding that trial counsel's performance was deficient for failing to question Ms. Smith regarding her potential bias on cross-examination, the evidence of the defendant's guilt was so overwhelming, see supra Section III.B.1, that "there is [no] reasonable probability that, absent the error[]," Strickland, 466 U.S. at 695, the jury would have "had a reasonable doubt respecting guilt[,]" id.  The Court therefore concludes that the defendant has failed to assert a valid ineffective assistance claim based upon trial counsel's failure to challenge the allegedly biased testimony of Ms. Smith.  See id. at 687 (requiring a showing that "deficient performance prejudiced the defense").

### 4.  Trial Counsel's Advice Regarding the Waiver of Speedy Trial Rights

Finally, the defendant argues that his "trial counsel was ineffective for permitting him to waive his [ ] right to a speedy trial." Def.'s Reply at 10; see also Def.'s § 2255 Mot. at 19.  The defendant states that "[o]n [April 18, 2016,] at [his] status hearing[,] [he] agreed to waive [his] constitutional right and statut[ory right] to [a] speedy trial based on advice from [his] attorney" that the attorney "need[ed] . . . additional time to adequately prepare for trial[.]"  Def.'s § 2255 Mot. at 19.  However, the defendant complains that "[his] attorney never attempted to prepare a defense for trial nor negotiate [a] better plea deal" and that his attorney "never sat with [him] to go over [any] of [his] [B]rady material nor interview possible alibi witness[es] in [a] timely fashion." Id. (underline added).  The defendant asserts that "[i]f he would have known that [his]

attorney was going to roll over on [him] the way [that] he did[,] [he] would[ have] exercised [his] constitutional right to a speedy trial and forced the government to try [him] by June 9[, 2016]." Id.

In opposition, the government argues that the defendant's claim is "meritless" because "[t]rial counsel reasonably requested a continuance so that trial counsel would have sufficient time to prepare for trial[.]"  Gov't Opp'n at 25.  Additionally, the government argues that the "defendant also cannot demonstrate that he was prejudiced by trial counsel's actions, as any delay in bringing the case to trial only benefited his defense, and there is no indication that the ultimate outcome of the proceeding would have been any different."  Id.  Furthermore, the government asserts that, "[e]ven if trial counsel had preserved and pursued a speedy trial claim, [the] defendant could not demonstrate that the government denied him a speedy trial."  Id. at 27.

The defendant's trial counsel entered his notice of appearance on November 19, 2015, approximately five months before the April 18, 2016 status hearing.  See Notice of Attorney Appearance at 1, ECF No. 5.  During the status hearing, trial counsel explained that he "came in as replacement counsel for the Federal Defender Service[,]" see Transcript of Status Conference at 2:15–16 (Apr. 16, 2016) ("Status Conference Tr."), ECF No. 57, and that he was awaiting the results of "[a] confirmatory DNA analysis" test, id. at 2:21.  The defendant's trial counsel further represented his intent to file a motion relating to pre-arrest interviews of the defendant the following month—i.e., in May 2016.  See id. at 7:3–17.  The Court advised the defendant regarding his constitutional and statutory speedy trial rights and queried the defendant regarding whether he understood what he would be giving up by waiving these rights.  See id. at 10:21–11:3.  The defendant agreed to waive his rights until July 29, 2016, and indicated that he understood the waiver was "because of counsel's need to have [ ] additional time to adequately

prepare for trial[.]" Id. at 11:12–13.  Thus, the Court concluded that "it [wa]s in the interest of

both the government and the defendant to permit the defendant to waive his right to a speedy

trial so that . . . his new counsel[,] having taken over from the Federal Defender, w[ould] have

adequate time to adequately prepare his case for trial." Id. at 11:21–12:1.

The defendant has not shown that his trial counsel's advice "to waive his [ ] right[s] to a

speedy trial[,]" at the April 18, 2016 status hearing, Def.'s Reply at 10, "fell below an objective

standard of reasonableness[,]" Strickland, 466 U.S. at 688, as measured by "prevailing

professional norms[,]" id.  Trial counsel advised the defendant to waive his speedy trial rights to

allow counsel additional time to adequately prepare for trial.  See Status Conference Tr.

at 11:12–13.  More specifically, counsel's advice was based on the need for additional time to

obtain the results of "[a] confirmatory DNA analysis" test, id. at 2:21, and to prepare a pre-trial

motion involving the potential suppression of evidence, see id. at 7:3–17.  Consequently,

counsel's advice to the defendant does not "amount[] to incompetence under 'prevailing

professional norms,'" Richter, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690), because

counsel made a "strategic choice[,]" Johnson, 2023 WL 4350783, at *2, to await additional

information and explore matters that possibly could have benefited the defendant at trial.  See

Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective

assistance of counsel must show that counsel's actions were not supported by a reasonable

strategy[.]").  And, "[t]he fact that in hindsight the defendant disagrees with this strategy does

not render counsel's performance deficient." United States v. Weaks, 840 F. Supp. 2d 12, 21

(D.D.C. 2012).  Moreover, the fact that the delay to better prepare for the trial did not discover

information that contributed to the defendant's defense does not prove that taking the time to

conduct the investigation amounted to deficient representation.  See Strickland, 466 U.S. at 699

(holding that counsel's strategic choice, "though unsuccessful, was the result of reasonable professional judgment"); United States v. Wilson, 15 F. Supp. 3d 126, 136 (D.D.C. 2014) ("The fact that a particular litigation strategy failed does not mean that it had no chance of success or that counsel was ineffective by employing it.").[8]

Therefore, the Court concludes that the defendant has failed to establish deficient performance under the first prong of the Strickland test because he has not "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Askew, 88 F.3d 1065, 1071 (D.C. Cir. 1996) (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689); see also United States v. Abney, 812 F.3d 1079, 1086 (D.C. Cir. 2016) (stating that Strickland's deficient performance prong "requires [a] showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment" (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 687)). Accordingly, the Court concludes that the defendant has failed to

---

[8] In his ineffective assistance of counsel claim related to the waiver of his speedy trial rights, the defendant also states that "[his] attorney never attempted to prepare a defense for trial nor negotiate [a] better plea deal" and that his attorney "never sat with [him] to go over [any] of [his] [B]rady material nor interview possible alibi witness[es] in [a] timely fashion." Def.'s § 2255 Mot. at 19 (underline added). Additionally, although not expressly included among any of the four asserted grounds for relief in his motion, the defendant makes other similarly conclusory statements. See, e.g., id. at 21 (stating that his attorney "fail[ed] to go over Brady material with [him] prior to trial to create some kind of defense for trial," "fail[ed] to conduct [a] reasonable investigation[,]" "fail[ed] to call critical witnesses to testify on [his] behalf," and was "reluctan[t] to present favorable evidence on [his] behalf" (underline added)). However, the defendant has failed to provide any factual support for these claims or explain how the allegations amounted to deficient representation of counsel or how he was prejudiced as a result. "[V]ague and conclusory allegations of this kind cannot support a finding that counsel's performance fell below an objective standard of reasonableness." United States v. Oladokun, 905 F. Supp. 2d 310, 315 (D.D.C. 2012) (internal quotation marks omitted). Thus, the Court will summarily deny these conclusory claims. See Mitchell v. United States, 841 F. Supp. 2d 322, 328 (D.D.C. 2012) ("[C]onclusory arguments may be summarily dismissed by the Court." (internal quotation marks omitted)); United States v. Smith, 136 F. Supp. 3d 4, 10 (D.D.C. 2015) ("Courts may deny wholly conclusory claims and claims entirely unsupported by facts."). Moreover, although the Court construes the defendant's pro se filings liberally, see Erickson, 551 U.S. at 94, the Court is not required to construct the defendant's arguments for him, see Martin, 2021 WL 4989983, at *16 n.1 (noting that "[t]he Court w[ould] not do [the defendant's] work for him" where the defendant only provided "a one-sentence conclusory statement" regarding his claim (citing United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994) for the proposition that courts "are not required to fashion [the d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments")).

assert a valid ineffective assistance claim based upon his trial counsel's advice to waive his speedy trial rights.  See Strickland, 466 U.S. at 687 (requiring a showing that defense "counsel's performance was deficient").[9]

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the defendant's motion to extend the deadline to file for habeas corpus relief and deny the defendant's § 2255 motion.

**SO ORDERED** this 4th day of January, 2024.

_____
REGGIE B. WALTON
United States District Judge

---

[9] To the extent that the defendant is raising an independent claim that either his constitutional or statutory right to a Speedy Trial was violated, those claims are procedurally defaulted because the defendant has not demonstrated cause excusing his procedural default as he does not allege any "objective factor external to the defense [that] impeded [his appellate] counsel's efforts to raise the claim, such as government interference or that the factual or legal basis for the claim was not reasonably available[,]" Martin, 2021 WL 4989983, at *3 (first alteration in original) (internal quotation marks omitted).  See Palmer, 902 F. Supp. 2d at 16 ("[W]ith the exception of ineffective assistance of counsel [ ] claims, claims that were not raised on direct review will only be entertained on a § 2255 motion if the petitioner can demonstrate 'cause' and 'actual prejudice' or that he is 'actually innocent.'" (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)).  Additionally, while "[i]neffective assistance of appellate counsel may [ ] constitute cause[,]" Palmer, 902 F. Supp. 2d at 17, the defendant's § 2255 motion does not raise any allegations of ineffective assistance of appellate counsel, see generally Def.'s § 2255 motion.